IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHRISTOPHER E. YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:13-cv-553-NJR-DGW |
| | ) | |
| JON M. CAMP, LT. BRADLEY, C/O LIND, | ) | |
| C/O FURLOW, C/O JAMES, C/O CLARK, | ) | |
| VIPIN K. SHAH, and OFFICER J. | ) | |
| HASTINGS, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment filed by Defendants Camp, Bradley, Lind, Furlow, James, Clark, and Hastings (Doc. 86) be **GRANTED IN PART and DENIED IN PART**, and that the Court adopt the following findings of fact and conclusions of law.

### INTRODUCTION

Plaintiff, Christopher E. Young, an inmate at Stateville Correctional Center, filed this Complaint pursuant to 42 U.S.C. § 1983 alleging defendants violated his constitutional rights

while he was incarcerated at Pinckneyville Correctional Center ("Pinckneyville").   After an initial screening, Plaintiff was allowed to proceed on Count One, an Eighth Amendment failure to protect claim against Defendants Camp, Bradley, Lind, Furlow, James, Clark, and Hastings, and Count Two, an Eighth Amendment deliberate indifference claim against Defendants Camp, Hastings, and Shah (Doc. 10).

On August 22, 2014, Defendants Bradley, Camp, Clark, Furlow, James, Hastings, and Lind filed a Motion for Summary Judgment arguing that Plaintiff failed to exhaust his administrative remedies prior to filing this suit (Doc. 86).  Based on the affidavit of Billie Greer, a Chairperson for the Administrative Review Board ("ARB"), Defendants argue that Plaintiff either failed to file grievances complaining of each Defendant's alleged conduct or failed to file grievances in the proper timeframe.  Plaintiff timely filed a response to Defendants' Motion on September 30, 2014 (Doc. 100).

## FINDINGS OF FACT

Plaintiff's claims against Defendants Bradley, Clark, Lind, James, and Furlow relate to their denial of Plaintiff's requests to be moved into protective custody.  In particular, Plaintiff alleges that when he arrived at Pinckneyville he asked Defendant Clark to place him in protective custody because he had known enemies.  According to Plaintiff, Defendant Clark denied his request and placed him in general population.  Defendant Clark avers that Plaintiff never submitted any grievances related to this request.  Plaintiff also claims that he submitted written requests and made verbal requests for placement into protective custody to Defendants Bradley, Clark, Lind, James, and Furlow that were summarily denied.  The date on which Plaintiff made these requests is unclear; however, it appears that immediately following his

transfer to Pinckneyville, Plaintiff made continuous requests for placement in protective custody to Defendants Bradley, Clark, Lind, and Furlow.  With respect to Defendant James, it appears that Plaintiff made his first request to this Defendant sometime after October 13, 2011.  Although Defendants acknowledge that Plaintiff submitted an emergency grievance dated December 17, 2010 that identified "known-enemies" that was received by the ARB on February 28, 2011, Defendants explain that this grievance was not reviewed on the merits as it was not submitted in the proper timeframe.  Further, Defendants argue that this is the only grievance related to Plaintiff's concerns regarding "known enemies" that could be relevant to his claims against them.  According to these Defendants, Plaintiff did not submit grievances to the ARB specifically complaining of their conduct alleged in this lawsuit.  However, the Court notes that in his December 17, 2010 grievance, Plaintiff stated that he had made his cell house lieutenants, sergeants, and correctional officers aware of his enemies, but they failed to take any action (Doc. 87-1, pp. 12-13).

Plaintiff's claims against Defendants Camp and Hastings relate to their alleged denial of medical attention and failure to protect Plaintiff from his cellmate on February 4, 2012.  On this date, Plaintiff alleges he asked Defendants Hastings and Camp for medical attention for his asthma, but they refused his requests.  Further, Plaintiff claims that these Defendants failed to intervene for approximately two minutes while his cellmate was attacking him.  Once these Defendants eventually ordered the cellmate to stop attacking Plaintiff, he claims they issued him a disciplinary ticket for assaulting an officer.  With respect to these claims, Defendants Camp and Hastings concede that Plaintiff submitted a grievance regarding the February 4, 2012 disciplinary ticket to which the Chief Administrative Officer (CAO) responded on March 29,

2012, and the ARB made its final determination on January 7, 2013.  However, Defendants Camp and Hastings argue this grievance is insufficient to exhaust Plaintiff's claims against them as it complains of alleged due process violations, not the Defendants' conduct at issue in this lawsuit.  The Court notes that this grievance, which Defendants indicate was filed February 4, 2012, was actually filed February 8, 2012 (Doc. 87-1, pp. 18-19).  In this grievance, Plaintiff recounts events leading up to the issuance of what he contends was a false disciplinary ticket issued on February 4, 2012 by Defendant Camp.  Plaintiff does not specifically mention being assaulted by his cellmate or being refused an inhaler or any other medical treatment by either Defendant Camp or Hastings (*Id.*).

In his response to Defendants' Motion, Plaintiff avers that he filed grievances complaining of the conduct at issue in this lawsuit, but he never received a response from his counselor and/or grievance officer.  Plaintiff explains that he was housed in segregation during this time and was not able to personally submit his grievances; accordingly, he placed these grievances in his cell door for the correctional officers to place in the mailbox.  Plaintiff claims these grievances were subsequently lost or thrown away.

### *Pavey Hearing*

Pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Court held a hearing on the issue of exhaustion on December 1, 2014.  At the hearing, Plaintiff provided testimony regarding the various grievances he avers exhausted his administrative remedies prior to filing this lawsuit.

With respect to his grievance dated December 17, 2010, Plaintiff testified that he was not able to appeal the CAO's decision to the ARB within the proper 30-day timeframe because he

was consistently being moved around the prison, including into segregation and then back to general population. Plaintiff testified that his property was confiscated while he was in segregation. Plaintiff could not provide the dates of his movements, but Defendants were ordered to provide the Court with information on Plaintiff's movements within Pinckneyville for the relevant time period. Plaintiff did not provide substantive testimony regarding additional grievances he claimed he filed that were either lost or destroyed.

Defendants maintained that Plaintiff's December 17, 2010 grievance is insufficient to establish exhaustion of his administrative remedies as it was submitted out of the proper timeframe. Defendants averred that there was no indication Plaintiff was in segregation in the 30 days following the CAO's decision. Defendants also informed the Court that another, unrelated grievance Plaintiff initially filed on September 30, 2010 was received by the ARB on the same date as his December 17, 2010 grievance.

The Court instructed the parties that it has copies of the other grievances filed by Plaintiff, specifically the grievance filed February 8, 2012, and did not require additional testimony with respect to these other grievances.

CONCLUSIONS OF LAW

### Summary Judgment Standard

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th

Cir. 2005).   The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).   *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004).   A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."   *Celotex,* 477 U.S. at 323.   "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."   *Id.*   The Seventh Circuit has stated that summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events."   *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

***Exhaustion Requirements under the PLRA***

> The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).   Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).   *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983).   Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The

Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006).  This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).  In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025.   In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies.  *Id.* 544 F.3d at 742.  If a Plaintiff has exhausted his remedies, the case will proceed on the merits.  If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

***Exhaustion Requirements under Illinois Law***

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor.  ILL. ADMIN. CODE TIT. 20, § 504.810(a).  If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id.* §504.810(b).  The grievance form shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of the complaint.  *Id.* § 504.810(b).  The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance.  *Id.* § 504.830(d).  The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed, where reasonably feasible under the

circumstances. *Id.* § 504.830(d).   An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.* § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006).   An inmate's administrative remedies are not exhausted until the appeal is ruled on by the Administrative Review Board.  *See Id.*  The Administrative Review Board shall make a final determination of the grievance within six months after receipt of the appealed grievance, where reasonably feasible under the circumstances.  *Id.* § 504.850(f).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken.  *Id.* §504.840.  If, after receiving a response from the CAO, an offender feels that the grievance has not been resolved, he may appeal in writing to the ARB within 30 days after the date of the CAO's decision.  *Id.* § 504.850(a).

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a).  The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances.  *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005).  The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue."  *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009).  If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible

persons" about the complained-of conditions.  *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)).  An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

*Discussion*

Based on the parties' arguments and the evidence at the hearing, the Court finds there are two grievances relevant to the issue of exhaustion in this lawsuit.  First, Plaintiff's grievance dated December 17, 2010, wherein Plaintiff asks that certain inmates be placed on his "known enemies" list is relevant to Count One of his Complaint against Defendants Bradley, Lind, Furlow, James, and Clark.  There are two apparent issues with respect to this grievance.  The first issue, as mentioned by Defendants, is that this grievance was rejected by the ARB for being submitted beyond the allowable timeframe for appeal.  Pursuant to Illinois Administrative Code, an inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision.  ILL. ADMIN. CODE TIT. 20, § 504.850(a).  Here, the CAO responded to Plaintiff's December 17, 2010 grievance on January 20, 2011.  Accordingly, in order to comply with the Illinois exhaustion requirements, this grievance should have been appealed to the ARB by February 19, 2011.  In this case, however, Plaintiff did not appeal this decision until February 23, 2011 and it was not received by the ARB until February 28, 2011.  Although Plaintiff failed to appeal his grievance to the ARB within 30 days, Plaintiff testified that his attempts at timely filing an appeal were thwarted due to his frequent movements within Pinckneyville from the time the CAO responded until the time the 30 day period expired.  A review of Plaintiff's housing records indicates that Plaintiff was moved six times during the

relevant time period. During this period, it is unclear whether Plaintiff had access to his property. Further, it is unclear when Plaintiff received the CAO's response to this grievance. In viewing the evidence in the light most favorable to Plaintiff, the Court finds that due to his frequent movements within Pinckneyville, Plaintiff lost significant time with respect to his efforts to file a timely appeal. While the Court does not condone any significant delays in Plaintiff's filing of an appeal, the delay here was not significant and easily attributable to his frequent movements. Defendants have failed to convince the Court that Plaintiff had the opportunity to appeal his grievance in a timely manner. Accordingly, based on the particular facts presented in this case, and in the interest of justice, the Court finds that this grievance was properly exhausted.

The second issue with respect to Plaintiff's grievance dated December 17, 2010 was not specifically addressed by Defendants; however, the Court finds it necessary to discuss whether this grievance sufficiently exhausts any claims in this lawsuit. The December 17, 2010 grievance asks that two inmates who are enemies of Plaintiff's be put on his "known enemies" list as he fears for his safety. Plaintiff explains that all staff, including lieutenants, sergeants, and correctional officers, were made aware of his issues with these particular inmates, but failed to take any action. The grievance officer's response to this grievance provides that "[g]rievant claims staff is aware of his matter and no one has taken actions for him on this matter." While the Illinois Administrative Code requires that a grievance "contain factual details regarding each aspect of the offender's complaint, including … the name of each person who is the subject of or who is otherwise involved in the complaint … [or] as much descriptive information about the individual as possible", the naming requirement is not absolute. ILL. ADMIN. CODE TIT. 20,

§ 504.810(b); *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011).  In *Maddox v. Love*, the plaintiff filed a grievance asserting a denial of his religious fellowship, but failed to name a single defendant in the grievance.  *Id.* at 712.  However, the prison never informed the plaintiff that the grievance was procedurally deficient and instead addressed the plaintiff's complaint on the merits at every stage.  *Id.* at 721-22.  The Seventh Circuit found that because the prison had addressed the plaintiff's grievance on the merits without regards to its procedural deficiency, it could not later rely on this defect to support a failure to exhaust defense.  *Id.*  Although Defendants in this case have not explicitly argued that this grievance is insufficient as it fails to name them, the Court finds that this argument would be futile.  Both the grievance officer and the CAO addressed this grievance on the merits and failed to inform Plaintiff of any procedural deficiency.  Moreover, Plaintiff mentions that "all the staff" was aware of this matter and failed to take action.  As Defendants Bradley, Lind, Furlow, James, and Clark are all internal affairs officers and regularly deal with inmates' "known-enemies" lists, this grievance should have put them on notice that there was a problem with Plaintiff's enemy list and/or housing situation (*See* Doc. 100-1, pp. 15-16).  Accordingly, the Court finds that this grievance is sufficient to exhaust against Bradley, Lind, Furlow, and Clark.  The Court notes; however, that this grievance is not sufficient to exhaust Plaintiff's claims against Defendant James.  According to Plaintiff's Complaint, he did not make any requests regarding his known enemies to Defendant James until after October 13, 2011.  As the December 17, 2010 grievance clearly precedes this date, it is not sufficient to exhaust against Defendant James.

The second grievance relevant to Plaintiff's claims in this matter is dated February 8, 2012, wherein Plaintiff complains that Defendant Camp wrote a false disciplinary ticket against

him.  This grievance is relevant to Count One and Count Two of Plaintiff's Complaint against Defendants Camp and Hastings.  There is no dispute that Plaintiff exhausted his administrative remedies with respect to this grievance.  Defendants argue, however, that it does not sufficiently exhaust the claims in this lawsuit against Defendants Camp and Hastings.  The Court agrees with Defendants.  In this grievance, Plaintiff details the event leading up to the issuance of his February 4, 2012 disciplinary ticket, but does not make any indication that Defendants Camp and/or Hastings denied him medical attention or failed to protect Plaintiff while his cellmate was attacking him.  Accordingly, the Court finds that Plaintiff's February 8, 2012 grievance is insufficient to establish exhaustion on his claims against Defendants Camp and Hastings as it fails to complain of any of the events relevant to these claims.

### RECOMMENDATIONS

Based on the foregoing, it is hereby **RECOMMENDED** that the Motion for Summary Judgment filed by Defendants Bradley, Camp, Clark, Furlow, James, Hastings, and Lind (Doc. 86) be **GRANTED IN PART and DENIED IN PART**; that the Court **FIND** that Plaintiff did not exhaust his administrative remedies prior to filing suit against Defendants James, Camp, and Hastings; that Defendants James, Camp, and Hastings be **DISMISSED WITHOUT PREJUDICE**; and that the Court adopt the foregoing findings of fact and conclusions of law.

If this Report and Recommendation is adopted, the remaining claims in this lawsuit will be: Count One, an Eighth Amendment failure to protect claim against Defendants Bradley, Lind, Furlow, and Clark; and Count Two, an Eighth Amendment deliberate indifference claim against Defendant Shah.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen

(14) days after service of this Report and Recommendation to file written objection thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals.  *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: February 25, 2015**

**DONALD G. WILKERSON**
**United States Magistrate Judge**